## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.P.,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF ORANGE; ORANGE POLICE DEPARTMENT; CAPTAIN C. DUNN, Individually and in his official capacity as a Captain for the Orange Police Department; LIEUTENANT T. GRUNDY, Individually and in his official capacity as a Lieutenant for the Orange Police Department; SERGEANT M. PIERRE, Individually and in his official capacity as a Sergeant for the Orange Police Department OFFICER RICARDO ARIAS-VAZQUEZ, Individually and in his official capacity as a Police Officer for the Orange Police Department; OFFICER KEENAN ROGERS, Individually and in his official capacity as a Police Officer for the Orange Police Department; OFFICER D. FANFAN, Individually and in his official capacity as a Police Officer for the Orange Police Department; EL RODEO BAR & GRILL; HERMINIO CARTEGENA; NATIVIDAD "NATALIA" CHACON; JOHN DOES 1-10 (fictitious names), Individually and in his/her official capacity as employees of the City of Orange and/or Orange Police Department and/or principals and/or employees of El Rodeo Bar and Grill,<br><br>    Defendants. | Civil Case No.:<br>2:16-cv-06122 (SDW)(LDW)<br><br><br><br><br><br>**<u>SECOND AMENDED COMPLAINT AND JURY DEMAND</u>** |

The Plaintiff residing in Essex County, New Jersey, complaining of the Defendants, says:

## JURISDICTION AND VENUE

1.     This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).  This Court has supplemental jurisdiction over the state law causes of action under 28 U.S.C. § 1367(a).

2.     Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because the events/omissions giving rise to these causes of action all occurred in the District of New Jersey.

## PARTIES

3.  Plaintiff was at all material times a resident of Essex County, New Jersey.

4.  Defendants, Captain C. Dunn ("Dunn"), Lieutenant T. Grundy, ("Grundy"), Sergeant M. Pierre ("Pierre"), Officer Ricardo Arias-Vazquez ("Arias-Vazquez), Officer Keenan Rogers ("Rogers"), and Officer D. Fanfan ("Fanfan") were at all times relevant to this complaint, duly appointed Officers of various rank of the Orange Police Department acting under color of law.  Defendants Dunn, Grundy, Pierre, Arias-Vazquez, Rogers  are being sued individually and in  their official  capacities.

5.  The City of Orange is a municipal corporation and a public employer of the individual Defendant.

6. The Orange Police Department is and was, at all times relevant to this matter, a division and/or department of the City of Orange entrusted with, among other things, enforcing federal, state and local laws and ordinances, and otherwise ensuring the safety of people and property within the jurisdictional limits of the City of Orange.

7. El Rodeo Bar and Grill ("Rodeo Bar") is an establishment doing business as El Rodeo Bar and Grill in the area of 350 Henry Street, Orange, NJ 07050.

8. Herminio Cartegena ("Cartegena") is the manager and/or owner of Rodeo Bar.

9. Natividad "Natalia" Chacon ("Chacon") is a present or former employee at El Rodeo Bar.

10. Defendants, John Does 1-10, are presently unknown police officers, employees, agents and/or representatives of the City of Orange and/or Orange Police Department and/or El Rodeo Bar and Grill whose unlawful actions are described, referenced and/or set forth herein. All are being sued individually and in their official capacities.

## CAUSE OF ACTION

11. On, or about, November 18, 2015, Arias-Vazquez was working as a uniformed police officer in a marked police vehicle for the Orange Police Department.

12. Arias-Vazquez was partnered with Rogers in the same patrol vehicle.

13. While on shift and in uniform Arias-Vazquez was hanging out and consuming alcohol at the Rodeo Bar located at 350 Henry Street, Orange, NJ 07050.

14. Upon information and belief, there was illicit and illegal activity being conducted from within Rodeo Bar which Arias-Vazquez, and other members of the Orange Police Department, were either involved and/or complicit in and/or providing protection for.

15. After imbibing at Rodeo Bar, Arias-Vazquez got into his marked police vehicle with Rogers and began patrolling the streets within the City of Orange.

16. As Arias-Vazquez and Rogers were patrolling Arias-Vazquez spotted Plaintiff's vehicle and began tailing her before ultimately engaging his lights and sirens in performing a motor vehicle stop.

17. After pulling Plaintiff over Arias-Vazquez informed Rogers, and Rogers agreed, that they were not going to call the stop into dispatch as they are required to do.

18. Arias-Vazquez then exited the vehicle and instructed Rogers to stay in the patrol vehicle as the stop did not require his involvement.

19. When Arias-Vazquez approached Plaintiff's vehicle he informed her that she was being pulled over for burnt out tail light.

20. Arias-Vazquez further informed Plaintiff that he was not going to issue her a ticket but asked her to roll her window down further.

21. Plaintiff informed Arias-Vazquez that the window was not working properly and would have to manually open it, i.e. pushed it down by hand.

22. Arias-Vazquez immediately placed his hands on the top of the open portion of the window and forced it down.

23. Arias-Vazquez then informed Plaintiff that he had seen her in town previously.

24. Arias-Vazquez then leaned into the vehicle through the, now open, driver's side window and began fondling Plaintiff's breasts over her clothing and insisting that Plaintiff follow him to his home which was nearby.

25. Plaintiff could now smell the scent of alcohol emanating from Arias-Vazquez.

26. Arias-Vazquez's perversion continued as he began touching Plaintiff in the area of her vagina before once again touching her breasts.

27. All the while Arias-Vazquez kept insisting that Plaintiff follow him back to his nearby home.

28. Fearing for her safety and well-being, Plaintiff pleaded with Arias-Vazquez to let her go.

29. Arias-Vazquez finally relented and told Plaintiff he would see her around town and returned to his marked police cruiser where Rogers, who witnessed the interaction, remained waiting idly.

30. Indeed, Rogers could have come to Plaintiff's aid and/or reported Arias-Vazquez's behavior as he is duty bound to do.

31. Instead, Rogers, in cowardly fashion, disregarded his oath and remained complicit in Arias-Vazquez's reprehensible conduct.

32. Plaintiff immediately responded to the Orange Police Department to report the incident.

33. When Plaintiff arrived at the Orange Police Department she was not met with the benevolence the public would expect to receive when reporting a crime.

34. Plaintiff first spoke to officer Fanfan who was working the front desk.

35. Upon hearing Plaintiff's complaint Fanfan triggered a sequence of events, in total contravention of standard procedure and training, which resulted in Plaintiff's complaint being broadcasted throughout the department.

36. More specifically, upon hearing Plaintiff's complaint Fanfan immediately notified Communications Supervisor Pierre about Plaintiff's complaint

37. Pierre in turn, and again in total contravention of standard procedure and training, broadcasted the information

38. As a result of this broadcast Dunn, who was working as the division commander at time, became aware of Plaintiff's complaint.

39. Dunn immediately took it upon himself to try and extinguish Plaintiff's complaint by reporting to the front desk area of the precinct where he berated Plaintiff by telling her that he was going to arrest her and put her in jail for lying about a police officer.

40. Plaintiff remained steadfast in her desire to report Arias-Vazquez's illicit behavior and informed Dunn that she was not lying.

41. At around the same time Grundy, who was supposed to be directly supervising Arias-Vazquez and Rogers was informed of the complaint.

42. Plaintiff was then placed into custody and made to sit and wait for an extended period of time.

43. During this time members of the Orange Police Department contacted Arias-Vazquez, either directly or indirectly, in effort to help their brother officer out and tip him off about the complaint Plaintiff was lodging against him.

44. Plaintiff, while still at the Orange Police Department waiting, received a call from Chacon who worked at Rodeo Bar.

45. Chacon, who Plaintiff was familiar with, told Plaintiff that she was calling at the instruction of Cartegena.

46. Chacon told Plaintiff that Cartegena was instructing her to not say anything about Arias-Vazquez and to not say anything about the illicit activities, i.e. drug dealing, that was occurring within the confines of Rodeo Bar.

47. It was abundantly clear from the call that Arias-Vazaquez and Cartegena were working in tandem to chill Plaintiff's desire to report the wrongdoings of both Arias-Vazquez and El Rodeo.

48. Plaintiff again remained steadfast and informed Chacon that she would not withdraw the complaint.

49. Shortly thereafter Plaintiff received another call from Chacon.

50. This time Chacon informed Plaintiff that Cartegena wanted to remind her that she has children and that anything could happen if she talks too much about the illicit activity taking place within the Rodeo Bar and the Orange Police Departments' protection of same as at least two other officers are known to be complicit in the illegal activity which was transpiring at El Rodeo. Plaintiff had an application of her phone which was able to record these threatening calls.

51. When Plaintiff, who was now in fear for her life and still within the confines of the Orange Police Department waiting area, turned the recordings over to

the officers who were present they realized the extent of the problem and their inability to make it "go away."

52. Shortly before this occurred Grundy summoned Arias-Vazquez and Rogers back to headquarters in an effort to conduct his own investigation into the matter despite the fact that doing so was in total contravention of policy procedure.

53. At that time, Grundy separated Arias-Vazquez and Rogers and inquired of them individually about how many traffic stops they made during their shift.

54. Arias-Vazquez, in an effort to cover-up his illicit behavior informed Grundy that he and Rogers only conducted two traffic stops that evening both of which were radioed in.

55. Likewise, Rogers, who continued to maintain the "thin blue line" of secrecy, lied in an effort to cover-up for Arias-Vazquez and also informed Grundy that they only conducted two motor vehicle stops both of which were radioed in.

56. Fortunately, Arias-Vazuez and Roger's lie fell apart when video surveillance surfaced of them stopping Plaintiff's vehicle at the exact time and location that she alleged.

57. In December 2015, the Essex County Prosecutor's Office charged Arias-Vazquez with Criminal Sexual Contact and Witness Tampering.

58. Arias-Vazquez has since entered into a negotiated plea agreement with the State under which he entered a plea of guilty to Obstruction in exchange for non-custodial probation for which he has been sentenced.

59. As a result of these events Plaintiff has suffered severe emotional anguish for which she continues to treat which has prevented her from being able to seek and maintain employment.

60. Furthermore, as a result of this incident, and more specifically due to the threats against her and her children, Plaintiff has been forced to uproot and relocate during the pendency of the prosecution of this matter on more than one occasion.

## FIRST COUNT

**Excessive Force**
**42 U.S.C. § 1983;**
**New Jersey Civil Rights Act <u>N.J.S.A.</u> § 10:6-2, et. seq.; &**
**New Jersey Constitution**

61. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62. During the course of a traffic stop Defendant Arias-Vazquez intentionally and/or recklessly used unreasonable and/or excessive force on Plaintiff, thereby collectively depriving her of her right to be free from the use of unreasonable force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § 1983, the Constitution of

the State of New Jersey and the Law of the State of New Jersey including, but not limited to, the New Jersey Civil Rights Act and the New Jersey Law Against Discrimination.

63. Under the totality of the circumstances, or any circumstances for that matter, Defendant Arias-Vazquez actions were not objectively reasonable.

64. The conduct of Defendant Arias-Vazquez occurred while he was acting under color of law and in his official capacity.

65. All of the actions and/or omissions described above were undertaken in a willful and malicious manner with an immoral purpose to injure and/or cause harm to Plaintiff.   Defendants are, therefore, liable to Plaintiff for punitive and compensatory damages.

66. As a direct and proximate result of Defendant's acts and/or omissions, Plaintiff was humiliated, disgraced, traumatized, suffered damage to her reputation, physical and mental anguish and injury and monetary loss and damage all to their great detriment.

**SECOND COUNT**
**Municipal Liability**
**42 U.S.C. § 1983 and the**
**New Jersey Civil Rights Act N.J.S.A. § 10:6-2 *et seq.***

67. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

11

68. At all relevant times, Defendants, City of Orange and/or the Orange Police Department, was the employer of the individual defendants and the individual defendants were acting as its' agents, servants and employees.

69. City of Orange, Orange Police Department failed to use reasonable care in the selection of its employees, against and/or servants, failed to properly train and/or supervise the individual defendants, and failed to provide the appropriate safeguards to prevent the excessive force, batter, conspiracy, and collective violation of the Plaintiff's rights.

70. City of Orange, Orange Police Department acted under color of law pursuant to an official policy or custom and practice of the City of Orange, Orange Police Department and intentionally, knowingly, recklessly or with deliberate indifference failed to properly and adequately control and discipline on a continuing basis its employees, agents and/or servants and/or otherwise failed to prevent the individual defendants from unlawfully and maliciously conducting, permitting or allowing the use of excessive force upon Plaintiff in violation of the rights, privileges and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and/or New Jersey.

71. City of Orange, Orange Police Department had knowledge of, or had it diligently and reasonably exercised its duties to instruct, supervise, control

and discipline its employees, agents and/or servants, would have had knowledge of the wrongful acts and/or omissions identified above and intentionally, knowingly or with deliberate indifference to Plaintiffs' rights, failed or refused to prevent their commission and/or omission.

72. City of Orange, Orange Police Department, therefore, directly or indirectly, and under color of law, thereby approved or ratified the unlawful, malicious and wanton conduct of the individual defendants.

73. More specifically, Defendant City of Orange had a culture in which officers did anything in their power to protect their brother officers from the consequences of their wrong doing.

74. By way of example, in this case the initial officers Plaintiff spoke to did everything in their power, including threatening to arrest Plaintiff, to chill and discourage Plaintiff's desire to lodge a complaint.

75. Defendants then tipped off their brother officer about the subject matter of the complaint in the hopes that he could somehow chill Plaintiff further.

76. Despite their best collective efforts Plaintiff, to her credit and the face of danger, remained steadfast in her convictions.

77. The City of Orange knew or should have known that its officers would have to make decisions daily regarding taking complaints regarding other officers within the department.

78. Rather than train, supervise, and implement a proper policy to investigate meaningfully police misconduct, the City of Orange and Orange Police Department adopted a policy and/or culture under which officers were to intentionally chill and deter civilian complaints in order to protect one another.

79. The Policy maker for the City of Orange knows the glaring need for training in how desk officers respond to civilian complaints given the numerous allegations that come before the department as well as the need to supervise officers and meaningfully investigate complaints of police misconduct.

80. Nonetheless, the Policy maker for Orange refuses to retain, supervise, or properly train its officers, create a legitimate IA department, or properly investigate and discipline instances of police misconduct.

81. The lack of training and/or the inadequate training in these areas is tantamount to a custom and/or policy that encourages, and indeed as occurred here, necessitates, the violation of these fundamental rights.

82. In addition, the failure to train the Defendant Officers in these areas is tantamount to the City of Orange's deliberate indifference to these rights.

83. What is more, the City of Orange has a policy and practice of not disciplining officers if they are found to have violated a citizen's constitutionally protected rights and immunities.

14

84. As shown in this case, officers acted with a sense of impunity, and even when faced with a serious allegation of misconduct, the officers apparently told the subject officer of said complaint, thereby giving him an opportunity to influence the complainant. It is an elementary tenant of Internal Affairs investigations that a police officer accused of misconduct should not be given the opportunity to influence a complainant, and that a complaint of police misconduct should be accepted, documented, and protected.

85. Indeed, the City of Orange does conduct investigations into allegations of police misconduct properly, if at all, and they failed to conduct an investigation into the instant conduct.

86. These policies and procedures, in addition to the failure to train the officers in the relevant constitutional laws, reveal a deliberate indifference by the City of Orange regarding the rights of citizens such as the Plaintiffs.

87. This deliberate indifference to citizens' rights is a proximate cause of Plaintiff's injuries.

88. Had the City of Orange employed a meaningful IA bureau, rather than employing one that shields and insulates officers from liability then perhaps the defendant officers here would not have felt they have the freedom to willfully and purposely violate the Plaintiff's rights without any regard for consequences and engage in a blatant attempt at a cover up.

89. The complete lack of accountability, record keeping, as well as investigation into IA complaints renders the IA department nothing more than an arm of the police department that shields officers from liability.

90. The failure to correct or cull the unlawful activities of these defendant officers as exposed by previous complaints caused Plaintiff's injuries here as the officers acted in a cavalier manner due to the fact that they knew there would be no professional consequences for their action.

**THIRD COUNT**
**Illegal Search and Seizure**
**42 U.S.C. § 1983;**
**New Jersey Civil Rights Act N.J.S.A. § 10:6-2, et. seq.; &**
**New Jersey Constitution**

91. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92. Defendant Arias-Vazquez, without any warrant or justification, wholly lacking in any cause whatsoever, probable or otherwise, illegally and improperly searched and seized Plaintiff.

93. Defendant Arias-Vazquez had no legal basis to search and seize Plaintiffs and did so maliciously.

94. These actions were undertaken in violation of the Fourth Amendment's proscription of unreasonable searches and seizures.

95. The acts and/or omissions described herein were undertaken and conducted in a willful and malicious manner, with an immoral purpose to injure the person, reputation, standing and integrity of Plaintiff. Defendants are, therefore, liable to Plaintiff for punitive damages.

96. As a direct and proximate result of Defendant's acts and/or omissions, Plaintiff was humiliated, disgraced, suffered damage to her reputation, physical and mental anguish and injury and monetary loss and damage all to their great detriment.

## FOURTH COUNT
### Assault and Battery

97. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98. Defendant Arias-Vazquez intentionally and unlawfully touched Plaintiff without permission and/or legitimate justification or cause on multiple occasions.

99. Plaintiff suffered injury, harm, damage and loss as a result of said improper contact.

100. Said contact was made with malicious and wanton disregard for Plaintiff's rights and sensitivities and with an intent or foreseeability of harmful consequences.

## FIFTH COUNT
**Civil Conspiracy**

101. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102. Defendants entered into an agreement and/or understanding to perpetuate one or more tortious acts upon Plaintiffs.

103. Defendant Arias-Vazquez and Defendant Rogers first entered into an agreement that they were going to unlawfully stop Plaintiff's vehicle.

104. Defendant Arias-Vazquez and Defendant Rogers then entered into a further agreement to not report the stop to dispatch as they are required to do.

105. Defendant Arias-Vazquez and Defendant Rogers then furthered their agreement when they lied about stopping Plaintiff's car when questioned.

106. Members of the Orange Police Department also entered into an agreement to try and cover up Arias-Vazquez's conduct by ensuring that he was made aware of Plaintiff's allegations.

107. Defendant Arias-Vazquez in turn reached out to Cartegena and entered into an agreement by which Cartegena would contact Plaintiff on behalf of Arias-Vazquez and El Rodeo cover up Arias-Vazquez's civil rights violations as well as to shield El Rodeo from any adversity related to the

illegal activities which the bar was complicit in permitting and the Orange Police Department's role in protecting El Rodeo.

108. Chacon became entangled in Defendant Arias-Vazquez and Defendant Cartagena's ploy when she willingly agreed to be the voice of the conspiracy by calling Plaintiff in an effort to have her abandon her complaint.

109. Defendants entered into the individiaul and collective said agreements and/or understandings for an unlawful purpose and/or to achieve an unlawful purpose by unlawful means.

110. Plaintiff suffered harm, loss and damage as a result of the one or more of the overt acts conducted and/or carried out by one or more of the conspirators in furtherance of the conspiracy.

**SIXTH COUNT**
**Intentional/Negligent Infliction of Emotional Distress**

111. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

112. The actions and/or omissions directed by and/or on behalf of the Defendants toward the Plaintiff were extreme and outrageous.

113. Said acts and/or omissions were intentionally conducted in a manner intended to produce or cause emotional distress and/or were conducted recklessly in deliberate disregard of the high probability that emotional stress would result.

114. The previously described misconduct caused and/or resulted in emotional distress that reasonable person could be expected to endure it.

115. As a direct and proximate result of the misconduct, Plaintiff was caused to suffer physical and emotional harm.

116. Defendants Rodeo Bar and Grill and Cartegena, for example, called Plaintiff while she was filing her complaint with regards to Defendant Arias-Vasquez's conduct and threatened her.  By referencing Plaintiff's children, and that they may get hurt by reporting Defendant Arias-Vasquez, these Defendants caused Plaintiff to suffer extreme emotional distress.

117. Indeed, immediately after being sexually assaulted, by Defendant Arias-Vasquez, Defendants Rodeo Bar and Grill and Cartegena called Plaintiff and told her that something can happen to her children, this causing Plaintiff to suffer a great deal of fear and anxiety that Defendants Rodeo Bar and Grill, Cartegena, Arias-Vasquez, and other will do harm to her and her children for reporting the sexual assault.

## SEVENTH COUNT

**Freedom of Speech
42 U.S.C. § 1983 &
New Jersey Civil Rights Act N.J.S.A. § 10:6-2 *et seq.***

118. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

119. At all relevant times, all individual municipal defendants were the agents, servants and/or employees of defendants City of Orange and/or Orange Police Department and were, at all times, acting in their official capacity as officers.

120. Defendants violated Plaintiff's right to freedom of speech as afforded by the First Amendment of the Constitution of the United States, 42 U.S.C. § 1983, the Constitution of the State of New Jersey and the Law of the State of New Jersey including, but not limited to, the New Jersey Civil Rights Act and the New Jersey Law Against Discrimination by threatening to arrest Plaintiff for lodging her initial complaint.

121. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff suffered physical and emotional anguish and Defendant's conduct served to chill, extinguish and punish Plaintiff's right to freedom of speech; specifically his right to complain about what was done to her.

## EIGHTH COUNT

### Negligence

122. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

123. Defendants, as sworn members of law enforcement, had a duty to protect Plaintiffs from the injury, acts alleged herein, and Constitutional violations suffered.

124. Defendants' failure to perform that duty is the proximate cause of Plaintiff's injury and damages.

125. Defendants Rodeo Bar and Grill and Cartegena were negligent in calling Plaintiff and implying that her and her children would be injured and threatened by reporting the sexual assault.

## NINTH COUNT
### Respondent Superior

126. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

127. Where applicable under the relevant case law and as to be determined, certain of the aforementioned acts and/or omissions of the employees of the Municipality may result in liability under the doctrine of Respondent Superior.

128. As a result, the Municipality bears responsibility for the acts and/or omissions of its employees and agents where properly cognizable under the relevant laws and statutes.

## TENTH COUNT

**Failure to Intervene**
**42 U.S.C. § 1983;**
**New Jersey Civil Rights Act <u>N.J.S.A.</u> § 10:6-2, et. seq.; &**
**New Jersey Constitution**

129. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

130. Defendant Arias-Vazquez engaged in the use of excessive force, assault and unlawful search and seizure of the Plaintiff.

131. While Defendant Arias-Vazquez was engaged in such behavior Defendant Rogers, who witnessed the entire encounter, sat by idly and failed to intervene to prevent such unlawful conduct.

132. First, Defendant Rogers was complicit in the unlawful conduct when he agreed to perform an unlawful motor vehicle stop of Plaintiff and agreed to not radio it in as required.

133. Second, the Defendant Rogers was complicit when he sat in the patrol car watching Arias-Vazquez commit a crime and failed do anything to stop or report the conduct.

134. Third, Defendant Rogers sat by idly again when Arias-Vazquez was conspiring with Cartegena to tamper with Plaintiff's willingness to follow through with her complaint.

135. Finally, the Defendant Rogers, despite being given the chance to come clean when Grundy questioned him, maintained the lie that he and Arias-Vazquez concocted.

136. Defendant Rogers had the opportunity to intervene and/or report Arias-Vazquez's conduct.

Rather than intervene to stop such behavior as the law mandates, Defendant Rogers did nothing and then attempted to conceal his brother officer's wrongdoings.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands that judgment be entered against the Defendants, jointly and severally, for:

(a) any and all damages sustained by the Plaintiff arising from the foregoing wrongful and unlawful acts of the Defendants;

(b) punitive damages;

(c) interest, both pre-judgment and post-judgment;

(d) attorney's fees;

(e) costs;

24

(f) injunctive relief, including but not limited to:

    (i)     An order from this Court enjoining the Orange Police Department from continuing its pattern and practice of violating citizens' civil rights;

    (ii)    placement of the Orange Police Department in receivership for the purpose of instituting programs to train, instruct, discipline, control, and supervise the officers of the Orange Police Department;

(g) and all such other relief as this court may deem appropriate, equitable, and just.

## JURY DEMAND

Plaintiff demands a trial by jury in this action for all issues triable by a jury.

## DESIGNATION OF TRIAL COUNSEL

Joel Silberman, Esq. and Aymen A. Aboushi are hereby designated as trial counsel.

## <u>CERTIFICATION PURSUANT TO L.CIV.R.11.2</u>

I certify that the matter in controversy is not the subject of any other action pending or contemplated. I further certify that I am aware of no other parties who should be joined in this matter.

DATED: June 27, 2017

Respectfully submitted,

The Law Offices Of Joel Silberman                         The Aboushi Law Firm PLLC
BY:   <u>s/ Joel Silberman</u>                          By:   <u>s/ Aymen Aboushi</u>
     Joel Silberman, Esq.                                  Aymen A. Aboushi, Esq.
     549 Summit Avenue                                   1441 Broadway, 5th Floor
     Jersey City, NJ 07306                                New York, NY 10018
     Tel. (201) 420-1913                                  Tel. (212) 391-8500
     Fax (201) 420-1914                                   Fax (212) 391-8508
     Email: joel@joelsilbermanlaw.com                     Email: Aymen@aboushi.com